United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| AMTRUST INTERNATIONAL UNDERWRITERS DAC, | Case No.  22-cv-03844-BLF |
| Plaintiff,<br>v. | **ORDER GRANTING IN PART AND DENYING IN PART 180 LIFE SCIENCES CORP.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 180 LIFE SCIENCES CORP., | [Re: ECF 41] |
| Defendant. | |
| 180 LIFE SCIENCES CORP., | |
| Counterclaimant,<br>v. | |
| AMTRUST INTERNATIONAL UNDERWRITERS DAC, | |
| Counterdefendant. | |
| 180 LIFE SCIENCES CORP., | |
| Third-Party Plaintiff,<br>v. | |
| FREEDOM SPECIALTY INSURANCE COMPANY, | |
| Third-Party Defendant. | |

This action arises out of an insurance coverage dispute relating to the directors and officers liability provisions of two policies issued to KBL Merger Corp. IV ("KBL").  A primary policy was issued by AmTrust International Underwriters DAC ("AmTrust") and an excess policy was issued by Freedom Specialty Insurance Company ("Freedom") (collectively, "the Insurers").  The dispute centers on the legal effect of certain corporate transactions in which KBL acquired a

United States District Court
Northern District of California

1   biotechnology company, changed its name from KBL to 180 Life Sciences Corp. ("180 Life"),

2   and replaced its board of directors.  According to 180 Life, those changes did not affect its status

3   as the named insured under the policies; 180 Life asserts that it is merely KBL under a new name.

4   The Insurers take the position that KBL ceased to exist as a result of the corporate transactions and

5   that 180 Life is a new entity that not an insured under the policies.

6          180 Life sought coverage under the AmTrust policy for expenses it advanced to two

7   former KBL directors and officers, Dr. Marlene Krauss ("Krauss") and George Hornig ("Hornig"),

8   in connection with investigative and legal proceedings relating to their former positions with KBL.

9   AmTrust denied coverage and filed this declaratory relief action, asserting that 180 Life is not an

10  insured under its policy and that in any event coverage for the expenses is barred by two policy

11  exclusions.  180 Life filed a counterclaim against AmTrust and a third-party complaint against

12  Freedom, seeking a declaration that it is an insured and is entitled to coverage for the expenses.

13  180 Life also seeks damages from AmTrust for breach of contract and bad faith.

14         180 Life now moves for partial summary judgment that it is entitled to coverage for the

15  expenses it advanced to Krauss and Hornig in connection with subpoenas issued to them by the

16  Securities and Exchange Commission ("SEC").  As discussed below, 180 Life has made coverage

17  demands to AmTrust and Freedom for additional expenses advanced to Krauss in connection with

18  other proceedings, but those additional expenses are not at issue in this motion.  The notice of

19  motion identifies five issues on which 180 Life seeks partial summary judgment:  (1) 180 Life is

20  an insured under the AmTrust and Freedom policies; (2) both polices provide coverage for the

21  expenses 180 Life has advanced, and will advance, to Krauss and Hornig in connection with the

22  SEC subpoenas; (3) AmTrust breached its policy by denying coverage for those expenses;

23  (4) AmTrust is obligated to pay 180 Life the expenses it has advanced, and will advance, to

24  Krauss and Hornig in connection with the SEC subpoenas; and (5) once the AmTrust policy is

25  exhausted, Freedom will be obligated to pay 180 Life the expenses it has advanced, and will

26  advance, to Krauss and Hornig in connection with the SEC subpoenas.

27         For the reasons discussed below, 180 Life's motion for partial summary judgment is

28  GRANTED IN PART AND DENIED IN PART.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## I. BACKGROUND

*KBL's Creation as a SPAC and Purchase of Insurance Policies*

KBL was created in 2016 as a special purpose acquisition company ("SPAC") with the goal of entering into a business combination or merger with one or more operating businesses. *See* McGovern Decl. ¶¶ 4-5, ECF 41-1.  KBL intended to target businesses in the healthcare and wellness industry.  *See id.* ¶ 5.  Krauss was the Chief Executive Officer ("CEO") of KBL and a director.  *See id.*  Hornig was a director of KBL.  *See id.*  KBL completed its initial public offering in June 2017.  *See id.* ¶ 6.

KBL purchased a claims-made Directors and Officers and Public Company Liability Policy from AmTrust for the initial coverage period of June 7, 2017 to June 7, 2018.  *See* McGovern Decl. ¶ 7 & Ex. 1 (AmTrust Policy).  The policy period later was extended to November 9, 2020.  *See id.*  KBL purchased run-off coverage for an additional two-year period from November 9, 2020 to November 9, 2022; KBL thus had until November 9, 2022 to give AmTrust notice of claims arising during the policy period.  *See id.*  The AmTrust policy provides $3 million in coverage.  *See id.*

KBL also purchased an Excess Insurance Policy from Freedom with the same initial policy period as the AmTrust policy.  *See* McGovern Decl. ¶ 8 & Ex. 2 (Freedom Policy).  Like the AmTrust policy, the Freedom policy period was extended to November 9, 2020.  *See id.*  KBL purchased run-off coverage under the Freedom policy for the period November 9, 2020 to November 9, 2022.  *See id.*  The Freedom policy follows form to the AmTrust Policy and provides $2 million of coverage excess of the AmTrust policy.  *See id.*

*KBL's Acquisition of CannBioRx and Corporate Name Change*

In July 2019, KBL entered into a business combination agreement under which its target, biotechnology company CannBioRx Life Sciences Corp. ("CannBioRx"), would combine with a number of other companies and then enter into a merger ("the Merger") with KBL's wholly owned subsidiary, KBL Merger Sub, Inc.  *See* McGovern Decl. ¶¶ 9-10.  As agreed, Katexco Pharmaceuticals Corp., CannBioRex Pharmaceuticals Corp., and 180 Therapeutics L.P. became subsidiaries of CannBioRx prior to the Merger.  *See id.* ¶ 10.  CannBioRx changed its name twice,

first to 180 Life Sciences Corp. and then to 180 Life Corp.  *See id*.  On November 6, 2020, 180 Life Corp. merged with KBL's wholly owned subsidiary KBL Merger Sub, Inc., which ceased to exist, leaving 180 Life Corp. a wholly owned subsidiary of parent KBL.  *See id*. ¶ 14.

In conjunction with the Merger, KBL changed its name to 180 Life Sciences Corp., a name that target company CannBioRx used briefly before ultimately settling on the name 180 Life Corp.  *See* McGovern Decl. ¶¶ 11-16.  Thus, at the close of the Merger, two entities remained – parent company 180 Life Sciences Corp. (f/k/a KBL), and its wholly owned subsidiary 180 Life Corp. (f/k/a CannBioRx and 180 Life Sciences Corp.).  *See id*.  Also in conjunction with the November 6, 2020 Merger, Krauss resigned as director and CEO of KBL.  *See* McGovern Decl. ¶ 14.  Hornig and the other KBL directors also resigned.  *See id*.

*180 Life's Advancement of Expenses to Krauss and Hornig*

The SEC opened an investigation regarding the Merger.  *See* McGovern Decl. ¶ 17.  In connection with that investigation, the SEC issued subpoenas to Krauss and Hornig requiring them to produce all communications and other documents concerning specific aspects of the Merger, including discussions and negotiations, fee arrangements, and KBL's preparation of its Forms 10-Q for the fiscal quarters ending June 30, 2020 and September 30, 2020.  *See* McGovern Decl. ¶ 17 & Ex. 7 (Subpoenas) at 1-5, 10-15, 92-97.

Krauss and Hornig requested that 180 Life advance them expenses they incurred in responding to the SEC subpoenas.  Krauss also requested advancement of expenses she incurred in defending against third-party claims in a New York state action, and in connection with an action that 180 Life filed against her and others in the Delaware Chancery Court ("Direct Action").  In the Direct Action, 180 Life claims among other things that Krauss breached fiduciary duties to KBL by falsely attesting to KBL's financial statements, improperly permitting redemption of KBL shares right before the Merger closed, and transferring money to herself and others under her control.  *See* Rohrer Decl. Ex. 2, Direct Action Compl., ECF 47-2.

180 Life did not advance the requested expenses to Krauss and Hornig.  Krauss filed suit against 180 Life in the Delaware Chancery Court ("Advancement Action"), seeking advancement of expenses relating to the SEC subpoenas, the New York state court action, and the Direct

United States District Court
Northern District of California

Action.  *See Krauss v. 180 Life Scis. Corp.*, No. CV 2021-0714-LWW, 2022 WL 665323, at *3 (Del. Ch. Mar. 7, 2022).  The court found that KBL's Charter and Bylaws, which were adopted by 180 Life in connection with the business combination agreement, "unambiguously provide for mandatory advancement."  *Id.* at *2-4.  Under the Charter and Bylaws, the Delaware court determined, "[a]dvancement is available to Krauss for expenses incurred in connection with 'any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative or investigative . . . by reason of the fact that . . . she is or was a director [or] officer of the Company.'"  *Id.*  Applying those provisions, the court held that 180 Life must advance Krauss the expenses she incurred in connection with the SEC subpoenas and in connection with certain defenses and a counterclaim in the Direct Action.  *See id.* at *10.

Pursuant to the Delaware Chancery Court's ruling, 180 Life has advanced expenses to Krauss in the amount of $2,432,002.47, most of which relate to the SEC subpoenas.  *See* McGovern Decl. ¶ 19.  180 Life also has advanced subpoena-related expenses to Hornig in the amount of $104,388.25.  *See id.* ¶ 20.

*180 Life's Demand for Coverage under the AmTrust and Freedom Policies*

180 Life demanded coverage from AmTrust and Freedom with respect to its advancement of expenses to Krauss and Hornig.  *See* Shields Decl. ¶¶ 4-9 & Exs. 9-14, ECF 41-10.  AmTrust denied coverage and thereafter engaged in back-and-forth correspondence with 180 Life between June 2021 and June 2022.  *See* Shields Decl. ¶¶ 2-9 & Exs. 8-14.  Freedom did not respond to the demand.  On July 1, 2022, 180 Life sent a final letter to both AmTrust and Freedom, demanding an acknowledgement of coverage for its advancement of expenses to Krauss and Hornig relating to the SEC subpoenas.  *See* Shields Decl. ¶ 9 & Ex. 14.  Neither AmTrust nor Freedom responded to the letter.  *See id.*

*The Present Action*

On June 29, 2022, AmTrust filed the present declaratory relief action, alleging that 180 Life is not merely KBL under a different name, but rather a new company that does not qualify as an insured under the AmTrust policy.  *See* Compl. ¶¶ 42-50, ECF 1.  AmTrust also alleges that even if 180 Life is an insured, coverage is barred by two exclusions – the Change in Control

exclusion and the Insured v. Insured exclusion.  *See id*. ¶¶ 51-68.

180 Life filed a counterclaim against AmTrust and a third-party complaint against Freedom, seeking a declaration that it is an insured under the policies and that it is entitled to coverage for the expenses it has advanced to Krauss and Hornig.  *See* Answer, Counterclaim and Third-Party Compl., ECF 14.  180 Life also seeks damages from AmTrust for breach of contract and bad faith.  *See id*.

Freedom answered 180 Life's third-party complaint, asserting a number of affirmative defenses including that 180 Life is not an insured under the Freedom policy and that no coverage is available under the Freedom policy because the AmTrust policy has not been exhausted.  *See* Answer, ECF 32.

180 Life now seeks partial summary judgment that it is entitled to coverage under the AmTrust and Freedom policies for expenses advanced to Krauss and Hornig in connection with the SEC subpoenas.  As noted, while 180 Life's coverage demands to the Insurers encompass additional expenses, the present motion is directed only to the subpoena-related expenses.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may filed a "Motion for Summary Judgment or Partial Summary Judgment."  Fed. R. Civ. P. 56(a).  The moving party must "identify[] each claim or defense--or the part of each claim or defense--on which summary judgment is sought."  *Id*.  "A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  "The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

"Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle*, 627 F.3d at 387.  "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id*.  "The court must

1   view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences

2   in the nonmovant's favor."  *City of Pomona*, 750 F.3d at 1049.  "Where the record taken as a

3   whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

4   issue for trial."  *Id*. (quotation marks and citation omitted).

5   **III.   DISCUSSION**

6        180 Life seeks partial summary judgment that:  (1) 180 Life is an insured under the

7   AmTrust and Freedom policies; (2) both polices provide coverage for the expenses 180 Life has

8   advanced, and will advance, to Krauss and Hornig in connection with the SEC subpoenas;

9   (3) AmTrust breached its policy by denying coverage for those expenses; (4) AmTrust is obligated

10  to pay 180 Life the expenses it has advanced, and will advance, to Krauss and Hornig in

11  connection with the SEC subpoenas; and (5) once the AmTrust policy is exhausted, Freedom will

12  be obligated to pay 180 Life the expenses it has advanced, and will advance, to Krauss and Hornig

13  in connection with the SEC subpoenas.

14       Before addressing these issues, the Court takes up two preliminary matters:  180 Life's

15  assertion of a new argument in its reply, and the Insurers' request to take additional discovery.

16  Next, the Court sets forth the law governing interpretation of the policies issued by AmTrust and

17  Freedom.  Finally, the Court takes up the five issues as to which 180 Life seeks partial summary

18  judgment.

19       **A.    180 Life's Assertion of New Argument in Reply**

20       180 Life' notice of motion indicates that it seeks partial summary judgment that it is

21  entitled to payment from the Insurers because it is an insured and "[b]oth the AmTrust Policy and

22  the Freedom Policy provide coverage" for the subpoena-related expenses advanced to Krauss and

23  Hornig.  Mot. at 1, ECF 41.  In the body of the motion, 180 Life expands on its position that the

24  policies "provide coverage," arguing that the subpoenas are "covered" under the policies, *id*. at 18;

25  the asserted Change of Control exclusion is "inapplicable," *id.* at 20; and the Insured v. Insured

26  exclusion is "inapplicable," *id.* at 21.

27       180 Life repeats those arguments in its reply, but it also raises a new argument that "[e]ven

28  if, *arguendo*, any question remains as to whether these exclusions apply," the Court should order

United States District Court
Northern District of California

7

the Insurers to advance the subpoena-related defense costs to it because there is at least a potential

for coverage.  Reply at 12-13, ECF 52.  180 Life supports its new reply argument by citing to the

"Advancement" clause in the AmTrust policy, which provides:

> B. Advancement
>
> Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** in excess of the applicable Retention on behalf of the **Insured** not less often than every 90 days and prior to final disposition of the **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured**, severally according to their respective interests, in the event and to the extent that any such **Insured** shall not be entitled under the Terms and Conditions of this **Coverage Element** to payment of such **Loss**.

AmTrust Policy at 38.

180 Life relies on *Braden Partners, LP v. Twin City Fire Ins. Co.*, No. 14-CV-01689-JST, 2017 WL 63019 (N.D. Cal. Jan. 5, 2017), for the proposition that this type of "advancement" clause is enforceable when there are any *potentially* covered claims.  *See* Reply at 13.  In *Braden*, the district court acknowledged that the Ninth Circuit has not definitively addressed this issue and that there is a split of opinion among district courts within the Ninth Circuit whether the duty to advance defense costs is triggered by a potential for coverage.  *See Braden* at 2017 WL 63019 at *8-10.  The *Braden* court elected to follow those cases that apply the potential for coverage standard, and found that the duty to advance defense costs was triggered on the facts before it.  *See id.* at 10.  The court stated that "[t]he policy's duty to advance defense costs also exists independently of the duty to indemnify, which further suggests that the actual coverage standard does not apply." *Id*.

At the hearing, the Court advised the parties that it will not consider 180 Life's new reply argument when ruling on the present motion.  The Court noted that the briefing on the motion would have come in quite differently had 180 Life initially framed its request for relief in terms of potential for coverage, and expressed its view that it would be inappropriate to issue a ruling under the potential for coverage standard under those circumstances.  "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

Accordingly, the Court has disregarded 180 Life's reply argument on the potential for

coverage standard.  180 Life may raise that argument at a future date, if appropriate, although as the parties have been advised the Court generally permits only one summary judgment motion per side in the life of the case.  *See* Order Regarding Summary Judgment Procedures ("Each party is limited to one motion for summary judgment or judgment on the pleadings."), ECF 38; Standing Order Re Civil Cases § VI.B ("Unless otherwise ordered by the Court, only 1 motion for summary judgment, partial summary judgment, or summary adjudication may be filed by each party.").

## B.    Insurers' Request to Take Additional Discovery

The opposition responds fully to all arguments presented in the motion, including 180 Life's arguments that the Change in Control and Insured v. Insured exclusions do not apply.  *See* Opp., ECF 47.  However, the penultimate paragraph of the opposition states that if the Court finds 180 Life to be an insured, further discovery will be necessary on the Change in Control and Insured v. Insured exclusions, as well as other potential defenses to coverage.  *See id.* at 23-24. That paragraph refers to the declaration of Erin Zimmerman, a "Complex/Specialty Claims professional," who opines that "[i]n the event that 180 Life's Motion for Summary Adjudication is granted, and this Court determines that 180 Life has met its burden to substantiate that it qualifies as an Insured under the AmTrust Policy, discovery will be required as to facts related directly to elements of 180 Life's further assertions that it is entitled to advancement of Defense Costs related to the SEC Subpoenas under the AmTrust Policy, and AmTrust's previously-asserted defenses to that assertion."  Zimmer Decl. ¶ 9, ECF 47-1.

At the hearing, the Insurers' counsel referred to these statements as a motion to take discovery pursuant to Federal Rule of Civil Procedure 56(d).  The Court did not understand the Insurers to be making a Rule 56(d) motion, perhaps because the opposition does not cite Rule 56(d).  The Court finds that the general assertion at the tail end of the opposition that discovery is needed in the event the Insurers otherwise would lose is not sufficient to present a Rule 56(d) motion.

Moreover, any such motion would be denied.  Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to

1    obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

2    Fed. R. Civ. P. 56(d).  "The burden is on the party seeking additional discovery to proffer

3    sufficient facts to show that the evidence sought exists, and that it would prevent summary

4    judgment." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).  The party

5    seeking additional discovery also must demonstrate that he or she acted diligently to pursue

6    discovery in the past.  *See id*.  The Zimmerman declaration does not satisfy these requirements.

7    The bulk of the declaration consists of lengthy quotations of various provisions of the AmTrust

8    policy.  *See* Zimmerman Decl. ¶¶ 5-7, 10, 12, 14.  Those quotations are interspersed with

9    conclusory assertions that AmTrust "may need further discovery," *id*. ¶ 11, or "will require

10   discovery," *id*. ¶ 13, regarding policy exclusions and other defenses to coverage.  The declaration

11   does not address what discovery has been taken in the case, what specific additional discovery is

12   needed, or why the discovery has not been taken.

13        Accordingly, to the extent the Insurers' opposition may be construed as including a Rule

14   56(d) motion, such motion is DENIED.

15        **C.     Applicable Insurance Law**

16        Because this is a diversity action, the Court looks to the substantive law of the forum state

17   in construing the policies and determining the applicability of the two exclusions.  *See Encompass*

18   *Ins. Co. v. Coast Nat'l Ins. Co.*, 764 F.3d 981, 984 (9th Cir. 2014) ("California's substantive

19   insurance law governs in this diversity case." (internal quotation marks and citation omitted)).

20   Under California law, "'[i]nterpretation of an insurance policy is a question of law and follows the

21   general rules of contract interpretation.'"  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647

22   (2003) (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)).  Interpretation of a

23   policy is controlled by the "clear and explicit meaning" of the contract provisions, which are

24   "interpreted in their ordinary and popular sense" unless given a special meaning by the parties.  *Id*.

25   at 647-48.  Policies are interpreted broadly to afford the greatest possible protection to the insured,

26   while "exclusionary clauses are interpreted narrowly against the insurer."  *Id*. at 648 (internal

27   quotation marks and citations omitted).

28        "Under California law, the burden is on the insured to establish that a claimed loss is

United States District Court
Northern District of California

10

within the basic scope of insurance coverage." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890 (9th Cir. 2021) (internal quotation marks and citation omitted).  "[O]nce an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." *Id.* (internal quotation marks and citation omitted).

### D.    Issues as to Which 180 Life Seeks Partial Summary Judgment

The Court next addresses the issues as to which 180 Life seeks partial summary judgment.

#### 1.    180 Life is an Insured under the AmTrust and Freedom Policies

180 Life first seeks partial summary judgment that it is an insured under the AmTrust and Freedom policies.  As the moving party, 180 Life has the initial burden to prove that it is an insured.  The AmTrust policy defines "Insured" to mean any "Company" or "Individual Insured." AmTrust Policy p. 15, Directors and Officers and Public Co. Liability Coverage Element ¶ II.I. "Company means (i) the Named Insured; (ii) any Subsidiary; and (iii) the Named Insured or any Subsidiary as a debtor-in-possession[.]"  AmTrust Policy p. 5, General Terms and Conditions ¶ II.B.  Finally, "Named Insured means the entity set forth in Item 1. of the General Declarations." AmTrust Policy p. 6, General Terms and Conditions ¶ II.I.  The entity set forth at Item 1. of the General Declarations is "KBL Merger Corp. IV," also referred to in this order as "KBL." AmTrust Policy p. 3, General Declarations ¶ 1.  These provisions taken together mean, unsurprisingly, that KBL is an insured under the policy.  180 Life contends that it is the same entity as KBL.

There is no dispute that if 180 Life is the same entity as KBL, merely proceeding under a new name, 180 Life is an insured under the policy.  *See Abbott Bldg. Corp. v. United States*, 951 F.2d 191, 196 (9th Cir. 1991) ("[T]here is no support for the proposition that a change of name results in a change of entity."); *Toutov v. Curative Labs Inc.*, No. 2:20-cv-11284-ODW (MAAx), 2021 WL 3883607, at *3 (C.D. Cal. Aug. 31, 2021) ("[T]he change of a corporation's name is not a change of the identity of a corporation and has no effect on the corporation's property, rights, or liabilities." (internal quotation marks and citation omitted)); *United States for Integrated Energy, LLC v. Siemens Gov't Techs., Inc.*, No. SACV 15-01534 JVS (DFMx), 2016 WL 11743177, at *3 (C.D. Cal. Mar. 22, 2016) ("Name changes do not affect a company's rights and liabilities.").

United States District Court
Northern District of California

1    180 Life submits the Second Amended and Restated Certificate of Incorporation of KBL

2 Merger Corp. IV, reflecting that the name of "the Corporation" is changed from "KBL Merger

3 Corp. IV" to "180 Life Sciences Corp."  McGovern Decl. Ex. 4 (Second Am'd and Restated

4 Certif.) at 2.  The Form 8-K filed with the SEC on November 6, 2020 reported that "[t]he

5 Company's stockholders approved a proposal to amend the Charter to change the name of 'KBL

6 Merger Corp. IV' to '180 Life Sciences Corp.'"  McGovern Decl. Ex. 3 (Form 8-K) at 3.  A press

7 release dated November 9, 2020, discussing KBL's acquisition of a biotechnology company, noted

8 that "[p]rior to the closing of the merger . . . KBL Merger Corp. IV changed its name to 180 Life

9 Sciences Corp."  McGovern Decl. Ex. 5-2 (Press Release) at 1.  180 Life argues persuasively that

10 nothing in these documents suggests that KBL ceased to exist on the date of the Merger.

11 Moreover, 180 Life points out that it continues to use the same IRS employer identification

12 number it used as KBL, and continues to submit its SEC filings under the CIK number it used as

13 KBL.  *See* McGovern Decl. ¶ 13.  This evidence is sufficient to meet 180 Life's initial burden to

14 show that it is the same entity as KBL, and merely changed its name.  The burden thus shifts to the

15 Insurers to identify specific facts demonstrating the existence of genuine issues for trial.

16    The Insurers argue that 180 Life's assertion that it is the same entity as KBL "is belied by

17 the very factual submissions that 180 Life presented to this Court in support of its [motion]."  Opp.

18 at 11.  The Insurers assert that the Forms 8-K, press releases, and other documents submitted by

19 180 Life establish that the business combination agreement resulted in a "reverse merger" by

20 which private biotechnology company 180 Life Corp. (f/k/a CannBioRx and 180 Life Sciences

21 Corp.) merged into public corporation KBL, which before the reverse merger was only a shell

22 company with no operations, and afterward was an active biotechnology company.  *Id*. at 14.

23    Characterizing the transaction as a reverse merger is not dispositive of 180 Life's status as

24 an insured, however.  In a reverse merger, "a private company arranges to be acquired by a public

25 company with minimal assets (i.e., a shell company) and transfers the private company's assets to

26 the new, publicly-traded owner in exchange for the shell company's equity.  *Kollman v. Nat'l*

27 *Union Fire Ins. Co. of Pittsburgh, Pa.*, No. CIV. 04-3106-PA, 2007 WL 2344825, at *3 n.2 (D.

28 Or. Aug. 13, 2007) (internal quotation marks and citation omitted).  After close of the transaction,

12

1    "the private company's former management then runs the original company *under the corporate*

2    *identity of the acquiring public company*."  *Id*. (internal quotation marks and citation omitted,

3    emphasis added).  The Insurers have not cited any authority for the proposition that a reverse

4    merger extinguishes the corporate identity of the acquiring public company.  As discussed above,

5    the evidence in this case shows that the new management continues to run 180 Life under the

6    same corporate identity as KBL, using the same IRS employer identification number and the same

7    the CIK number.  *See* McGovern Decl. ¶ 13.

8            The Insurers point to various amendments to KBL's charter and articles of incorporation as

9    evidence that KBL's corporate identity was extinguished and a new corporation was created.

10   However, "[t]he mere amendment of a charter or articles of incorporation does not create a new

11   corporation or otherwise affect the identity of the corporation, or its existing rights of action,

12   property rights, or liabilities."  18 C.J.S. Corporations § 81.  "[T]his rule does not apply when it

13   clearly appears that the intention was to create a new corporation, either by reincorporating the

14   original corporation or by creating another and distinct corporation to succeed it."  *Id*.  The

15   Insurers have not submitted evidence of an intention to create a new corporation, either by

16   reincorporation or creation of a distinct corporation.

17          The Insurer's reliance on *Simple Global*, an unpublished Delaware Superior Court

18   decision, is misplaced.  *See Simple Global, Inc. v. Brathwait Watches, Inc.*, No. CV N21C-01-086

19   FWW, 2022 WL 100363 (Del. Super. Ct. Jan. 10, 2022).  In *Simple Global*, the plaintiff sought to

20   enforce a stipulated judgment it entered into with one company, BI, against another company,

21   BWI, on the theory that BWI was merely a continuation of BI under a different name.  *See id.* at

22   *1.  The superior court noted that "[m]ere continuation of a predecessor corporation and fraud are

23   two exceptions to the general rule that when one company sells or otherwise transfers all of its

24   assets to another company the buyer generally is not responsible for the seller's liabilities."  *Id*. at

25   *2.  The superior court stated that "[t]he mere continuation theory of successor liability has been

26   narrowly construed," and listed a number of factors relevant to application of that theory,

27   including "the common identity of the officers, directors, or stockholders of the predecessor and

28   successor corporations, and the existence of only one corporation at the completion of the

transfer." *Id*. *Simple Global* is factually distinguishable from the present case, which does not involve the general rule that "the buyer generally is not responsible for the seller's liabilities" or exceptions to that rule.

The Insurers argue that "from a coverage perspective, the Insurers issued coverage to KBL as a 'shell company' that would seek to enter into a transaction like the Business Combination Agreement, but the Policies were never priced or written to provide coverage for an operating biotechnology company like 180 Life." Opp. at 14.  The Court finds this argument to be completely unpersuasive in light of the fact that the Insurers sold KBL run-off coverage for a two-year period following expiration of the coverage period.  KBL paid $58,050 to AmTrust, and $27,000 to Freedom, for that run-off coverage.  *See* AmTrust Policy at p. 57; Freedom Policy at p. 8.  It was no secret that KBL was a SPAC, or that KBL's management and control would change as a result of the contemplated Merger.  The AmTrust policy expressly states that the policy "may not be cancelled" after such change in management and control.  AmTrust Policy at p. 33, Amendments ¶ 5.  If the Insurers believed that the named insured would cease to exist as a result of that contemplated change, they charged KBL tens of thousands of dollars for run-off coverage that could never be utilized by the named insured.

In summary, 180 Life has met its initial burden to show it is an insured under the policies, and the Insurers have failed to identify any evidence that would support a determination that it is not.  Accordingly, 180 Life's motion for partial summary judgment that it is an insured under the policies is GRANTED.

### 2.    Existence of Coverage

180 Life next seeks partial summary judgment that both polices provide coverage for the expenses 180 Life has advanced, and will advance, to Krauss and Hornig in connection with the SEC subpoenas.  As discussed above, "[u]nder California law, the burden is on the insured to establish that a claimed loss is within the basic scope of insurance coverage." *Mudpie*, 15 F.4th 890 (internal quotation marks and citation omitted).  "[O]nce an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." *Id*. (internal quotation marks and citation omitted).

United States District Court
Northern District of California

In the context of the present motion for partial summary judgment, this means that 180 Life has the initial burden to show that the subpoena-related expenses are within the basic scope of coverage under the AmTrust and Freedom policies.  If 180 Life meets that burden, the burden will shift to the Insurers to show that there are disputed facts that create an issue for trial as to whether the subpoena-related expenses are within the basic scope of coverage.

If 180 Life establishes that the subpoena-related expenses are within the basic scope of coverage, it must address the Insurers' assertions that coverage is excluded under the Change in Control exclusion and the Insured v. Insured exclusion.  Although the Insurers have the ultimate burden of proving the applicability of the exclusions at trial, 180 Life still must meet its initial burden on summary judgment with respect to the exclusions.  *See In re Oracle*, 627 F.3d at 387. 180 Life may do so by showing that there is an absence of evidence supporting the Insurers' position that the exclusions apply.  *See id.* ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.").

Applying these standards, the Court first addresses whether 180 Life has established that the subpoena-related expenses are within the basic scope of coverage under the policies.  Next, the Court addresses whether 180 Life has established that the Insurers cannot prove that the Change in Control exclusion applies.  Finally, the Court addresses whether 180 Life has established that the Insurers cannot prove that the Insured v. Insured exclusion applies.

### a.      The Expenses are Within the Basic Scope of Coverage

The provisions of the AmTrust policy defining the scope of coverage are set forth below; as noted, the Freedom policy follows form.  *See* McGovern Decl. Ex. 1 (AmTrust Policy); Ex. 2 (Freedom Policy).

**Coverage B: Company Reimbursement Coverage**

The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for any actual or alleged **Wrongful Act** of such **Individual Insured**, but only when and to the extent that such **Company** has indemnified such **Individual Insured** for such **Loss**.

AmTrust Policy p. 13, Directors and Officers and Public Co. Liability Coverage Element ¶ 1.

"Company" is defined to include the named insured or its subsidiary.  AmTrust Policy p. 5, General Terms and Conditions ¶ II.B.  "Individual Insured" includes an "Executive" of the Company, meaning "any past, present or future duly elected or appointed director (including shadow director and de facto director), officer, trustee, regent, governor, management committee member of a duly constituted committee, member of the Board of Managers, Advisory Board, Supervisory Board or Audit Committee, board representative or board observer of a **Company**." AmTrust Policy p. 15, Directors and Officers and Public Co. Liability Coverage Element ¶ II.H; p. 35, Amendments ¶ 12.

"Loss" is defined to include "**Defense Costs** which the insured is legally obligated to pay[.]"  AmTrust Policy p. 36, Amendments ¶ 14.  "Defense Costs" include "reasonable fees, costs and expenses consented to by the **Insurer** . . . resulting solely from . . . the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**."  AmTrust Policy p. 35, Amendments ¶ 11.  "Claim" is defined in relevant part to include:

> 3. a civil, criminal, administrative or regulatory investigation of an **Individual Insured** by a federal, state, local or foreign law enforcement authority or the enforcement body of any securities exchange:
>
> . . .
>
> > (ii) in the case of an investigation by the Securities and Exchange Commission ("SEC") or a similar state or foreign government authority, after:
> >
> > > (a) the service of a subpoena upon such **Individual Insured**. . . .

AmTrust Policy p. 34, Amendments ¶ 10.

180 Life has the initial burden to show that the expenses it has advanced, and will advance, to Krauss and Hornig in connection with the SEC subpoenas fall within the basic scope of coverage under these policy provisions.  Under Coverage B, 180 Life is entitled to reimbursement if it is a "Company" that has suffered a "Loss" arising from a "Claim" first made against an "Individual Insured."  As discussed above, 180 Life has established that it is the named insured, and therefore that it is a "Company."  180 Life also has submitted evidence that it paid two million dollars (the "Loss") in expenses relating to the SEC subpoenas (the "Claims") issued to Krauss and Horning ("Individual Insureds").  The subpoenas (the "Claims") were first issued to Krauss

1   and Hornig during the Extended Reporting Period.  The Court finds that 180 Life has shown that

2   the subpoena-related expenses fall with the basic scope of coverage under the policies.  The

3   burden thus shifts to the Insurers to demonstrate the existence of disputed facts regarding the basic

4   scope of coverage.

5     Aside from arguing that 180 Life is not the named insured, and therefore is not a

6   "Company," the Insurers do not dispute that the subpoena-related expenses fall within the basic

7   scope of coverage.

8     Accordingly, the Court GRANTS 180 Life partial summary judgment that the subpoena-

9   related expenses fall within the basic scope of coverage under the AmTrust and Freedom policies.

10        **b.**  **Change in Control Exclusion**

11   The Change in Control exclusion provides as follows:

12   If during the **Policy Period**:

13   1. the **Named Insured** shall consolidate with or merge into any other entity or
     group of persons or entities acting in concert, or

15   2. any person or entity or group of persons or entities acting in concert shall acquire
     **Management Control** of the **Named Insured**,

16   (1 and/or 2 herein referred to as a Change In Control), then this policy may not be
17   cancelled thereafter and it shall not, in any event, apply to any **Claim** alleging in
     whole or in part any **Wrongful Acts** committed, attempted or allegedly committed
18   or attempted by any **Insured** subsequent the date of such Change In Control.

19   AmTrust Policy at p. 33, Amendments ¶ 5.

20     180 Life has the initial burden to show that the Insurers cannot prove that the Change in

21   Control exclusion applies.  It is undisputed that there was a change in control on November 6,

22   2020, the date the Merger closed, which was also the effective date of the resignations of KBL's

23   CEO, Krauss, and its entire board of directors.  Thus, coverage is barred for "any **Claim** alleging

24   in whole or in part any **Wrongful Acts** committed, attempted or allegedly committed or attempted

25   by any **Insured**" after November 6, 2020.

26     180 Life argues that this provision is not implicated by the SEC subpoenas, because those

27   subpoenas related only to pre-Merger conduct.  The Court finds this argument unpersuasive

28   because the subpoenas clearly requested documents created and relating to time periods both pre-

17

1   Merger and post-Merger.  The subpoenas required production of all documents created during, or

2   concerning, the period from January 1, 2018 through the dates of the subpoenas.  *See* McGovern

3   Decl. ¶ 17 & Ex. 7 (Subpoenas) at 1-5, 10-15, 92-97.  Krauss was served with two subpoenas,

4   dated April 23, 2021 and May 5, 2021, and Hornig was served with one subpoena, dated May 6,

5   2021.  *See id.*  Moreover, the May 5, 2021 subpoena served on Krauss specifically requested

6   documents sent to, received, from, referring to, or otherwise concerning the target biotechnology

7   company *after* it merged with KBL's subsidiary.[1]  *See id.* at 5.

8       180 Life argues that because the subpoenas concern the roles of Krauss and Hornig as

9   directors of KBL, and they resigned those positions on November 6, 2020, the subpoenas by

10  definition cannot relate to wrongful acts committed by Krauss and Hornig after November 6,

11  2020.  The Court cannot agree with 180 Life's reasoning on this point.  That Krauss and Hornig

12  resigned from KBL in conjunction with the Merger does not mean that they cut off all

13  involvement with KBL/180 Life as of that date.  It also does not mean that they could not have

14  committed a wrongful act after that date.  It is clear from the record that some of KBL's SEC

15  filings were prepared after the Merger date, and that Krauss at least may have been involved in

16  preparation of those filings.  Moreover, Krauss and Hornig's status as Individual Insureds extends

17  beyond their resignation dates.  "Individual Insured" includes an "Executive" of the Company,

18  meaning "any past, present or future duly elected or appointed director . . . of a Company."

19  AmTrust Policy p. 15, Directors and Officers and Public Co. Liability Coverage Element ¶ II.H; p.

20  35, Amendments ¶ 12.

21      In light of the subpoenas' requests for documents created and relating to time periods both

22  pre-Merger and post-Merger, the Court finds that 180 Life has not met it initial burden to show

23  that the Insurers cannot prove that the Change in Control exclusion applies to bar coverage for the

24

25  _____

[1] The subpoena requested documents relating to "180 Life Sciences Corp. (after its merger with
26  KBL)."  *See* McGovern Decl. Ex. 7 (Subpoenas) at 5.  While this request is confusing at first
    glance in light of the fact that several of the companies have used identical or similar names, the
27  reference to the merger makes clear that the request related to 180 Life Corp. f/k/a 180 Life
    Sciences Corp. f/k/a CannBioRx, the entity that merged with KBL Merger Sub, Inc.

28

1    subpoena-related expenses.

2        Accordingly, 180 Life's motion for partial summary judgment that both polices provide

3    coverage for the subpoena-related expenses is DENIED.

4                    **c.**        **Insured v. Insured Exclusion**

5        The Insured v. Insured exclusion provides "[t]he **Insurer** shall not be liable to make any

6    payment for **Loss** in connection with any **Claim** made against any **Insured** . . . which is brought

7    by or on behalf of a **Company**, **Outside Entity** or any **Executive** or **Outside Entity Executive**[.]"

8    AmTrust Policy p. 17, Directors and Officers and Public Co. Liability Coverage Element ¶ III.F.

9    "This Exclusion shall not apply to . . . any **Claim** brought by an **Executive** or **Outside Entity**

10   **Executive** in the form of a crossclaim or third-party claim for contribution or indemnity which is

11   part of and results directly from a Claim which is covered by this policy[.]"  *Id.* ¶ III.F.1.

12       180 Life has the initial burden to show that the Insurers cannot prove that the Insured v.

13   Insured exclusion applies.  The Court finds that burden easily met here, because the SEC

14   subpoenas do not constitute claims brought by or on behalf of a Company, Executive, or other

15   Insured.  The burden therefore shifts to the Insurers to identify evidence creating a factual dispute.

16       The Insurers offer argument regarding the Direct Action filed by 180 Life and the

17   Advancement Action filed by Krauss.  Expenses relating to those actions are not at issue in this

18   motion.

19       Accordingly, the Court GRANTS 180 Life partial summary judgment that the Insurers

20   cannot prove that the Insured v. Insured exclusion applies to bar coverage for the expenses

21   incurred by Krauss and Hornig in connection with the SEC subpoenas.

22              **3.**        **AmTrust's Asserted Breach of its Policy**

23       180 Life seeks partial summary judgment that AmTrust breached its policy by denying

24   coverage for the expenses that Krauss and Hornig incurred in connection with the SEC subpoenas.

25   Because 180 Life has not established the inapplicability of the Change in Control exclusion, it is

26   not entitled to a judgment that AmTrust breached the policy.

27       The motion for partial summary judgment is DENIED on the issue of whether AmTrust

28   breached its policy.

United States District Court
Northern District of California

1

**4.      AmTrust's Asserted Obligation to Pay Expenses**

180 Life seeks partial summary judgment that AmTrust is obligated to pay 180 Life the expenses it has advanced, and will advance, to Krauss and Hornig in connection with the SEC subpoenas.  As discussed above, 180 Life has not established that there is coverage under the AmTrust policy.

The motion for partial summary judgment is DENIED on the issue of whether AmTrust is obligated to pay 180 Life the subpoena-related expenses advanced to Krauss and Hornig.

**5.      Freedom's Asserted Obligation to Pay Expenses**

180 Life seeks partial summary judgment that once the AmTrust policy is exhausted, Freedom will be obligated to pay 180 Life the expenses it has advanced, and will advance, to Krauss and Hornig in connection with the SEC subpoenas.  As discussed above, 180 Life has not established that there is coverage under the AmTrust policy.  The Freedom policy follows form to the AmTrust policy.  Accordingly, 180 Life has not established its entitlement to partial summary judgment against Freedom.

The motion for partial summary judgment is DENIED on the issue of whether Freedom is obligated to pay 180 Life the subpoena-related expenses advanced to Krauss and Hornig upon the exhaustion of the AmTrust policy.

**IV.   ORDER**

(1)     180 Life's motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART as follows:

(a)     with respect to 180 Life's request for judgment that 180 Life is an insured under the AmTrust and Freedom policies, the motion is GRANTED.  180 Life is an insured under both policies.

(b)     with respect to 180 Life's request for judgment that the AmTrust and Freedom polices provide coverage for the expenses 180 Life has advanced, and will advance, to Krauss and Hornig in connection with the SEC subpoenas, the motion is DENIED on the ground that 180 Life failed to meet its initial burden to show that the Insurers cannot prove that the

United States District Court
Northern District of California

20

1   Change in Control exclusions applies.  However, 180 Life is GRANTED

2   partial summary judgment on the issue that the subpoena-related expenses

3   fall within the basic scope of coverage under the AmTrust and Freedom

4   policies, and is GRANTED partial summary judgment on the issue that the

5   Insurers cannot prove that the Insured v. Insured exclusion applies to bar

6   coverage for the subpoena-related expenses.

7   (c)   with respect to 180 Life's request for judgment that AmTrust breached its

8         policy by denying coverage for the expenses Krauss and Hornig incurred in

9         connection with the SEC subpoenas, the motion is DENIED.

10  (d)   with respect to 180 Life's request for judgment that AmTrust is obligated to

11        pay 180 Life the expenses it has advanced, and will advance, to Krauss and

12        Hornig in connection with the SEC subpoenas, the motion is DENIED.

13  (e)   with respect to 180 Life's request for judgment that upon exhaustion of the

14        AmTrust policy, Freedom will be obligated to pay 180 Life the expenses it

15        has advanced, and will advance, to Krauss and Hornig in connection with

16        the SEC subpoenas, the motion is DENIED.

17  (2)   This order terminates ECF 41.

18

19  Dated:  April 21, 2023

20  _____

21  BETH LABSON FREEMAN
    United States District Judge

_United States District Court_
_Northern District of California_

21