United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

AMTRUST INTERNATIONAL
UNDERWRITERS DAC,

       Plaintiff,

    v.

180 LIFE SCIENCES CORP.,

       Defendant.

_____

180 LIFE SCIENCES CORP.,

       Counterclaimant,

    v.

AMTRUST INTERNATIONAL
UNDERWRITERS DAC,

       Counterdefendant.

_____

180 LIFE SCIENCES CORP.,

       Third-Party Plaintiff,

    v.

FREEDOM SPECIALTY INSURANCE
COMPANY,

       Third-Party Defendant.

Case No.  22-cv-03844-BLF

**ORDER GRANTING 180 LIFE
SCIENCES CORPORATION'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

[Re: ECF 62]

This order addresses a motion for partial summary judgment filed by 180 Life Sciences

Corp. ("180 Life") in this insurance coverage action relating to the directors and officers ("D&O")

liability provisions of policies issued by AmTrust International Underwriters DAC ("AmTrust")

and Freedom Specialty Insurance Company ("Freedom") (collectively, "the Insurers").  *See* Mot.,

ECF 62.  As relevant here, the parties dispute whether the policies provide coverage for 180 Life's

payment of expenses incurred by two of its former directors and officers, Dr. Marlene Krauss

1    ("Krauss") and George Hornig ("Hornig"), in connection with subpoenas issued to them by the

2    Securities and Exchange Commission ("SEC").  180 Life seeks partial summary judgment that an

3    "Advancement" clause in the policies requires the Insurers to advance the subpoena-related

4    expenses to 180 Life pending a final coverage determination.  The Insurers oppose the motion.

5           180 Life's motion is GRANTED as discussed below.

6    **I.      BACKGROUND**

7           *KBL's Purchase of Policies, Merger, and Name Change to 180 Life*

8           The facts giving rise to this litigation are set forth in the Court's order addressing 180

9    Life's prior motion for partial summary judgment, and need not be repeated in full here.  *See* Prior

10   Order, ECF 59.  In brief, 180 Life previously was known as KBL Merger Corp. IV ("KBL").  *See*

11   *id*. at 14.  KBL purchased a claims-made Directors and Officers and Public Company Liability

12   Policy from AmTrust with a policy limit of $3 million.  *See id.* at 3.  KBL also purchased an

13   Excess Insurance Policy from Freedom that follows form to the AmTrust policy and provides $2

14   million of coverage excess of the AmTrust policy.  *See id.*  KBL thereafter changed its name to 180

15   Life in conjunction with a November 6, 2020 merger ("the Merger") that involved the resignation

16   of its chief executive officer, Krauss, and all directors, including Hornig.  *See id.* at 4.

17          *180 Life's Advancement of Subpoena-Related Expenses to Krauss and Hornig*

18          The SEC opened an investigation into the Merger and issued subpoenas to Krauss and

19   Hornig.  *See* McGovern Decl. ¶ 8, ECF 62-1.  Another court has ordered 180 Life to advance to

20   Krauss the expenses she incurs in connection with the SEC subpoenas.  *See id.* ¶ 9.  To date, 180

21   Life has advanced millions of dollars in subpoena-related expenses to Krauss.  *See id.* ¶ 10.  180

22   Life also has advanced more than $100,000 in subpoena-related expenses to Hornig.  *See id.*

23          *Present Action*

24          180 Life demanded coverage under the AmTrust and Freedom policies for the subpoena-

25   related expenses advanced to Krauss and Hornig.  AmTrust then filed the present declaratory relief

26   action, asserting that 180 Life is not an insured under the AmTrust policy issued to the pre-Merger

27   entity KBL, and that in any event the subpoena-related expenses are subject to policy exclusions.

28   In response, 180 Life filed a counterclaim against AmTrust and a third-party complaint against

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Freedom, seeking (as relevant here) coverage for the subpoena-related expenses.  Freedom

2    answered, asserting that no coverage is available under the Freedom policy.

3              *180 Life's Prior Motion for Partial Summary Judgment*

4              180 Life filed a prior motion for partial summary judgment, seeking determinations that it

5    is the named insured under the policies and that the policies provide coverage for the subpoena-

6    related expenses.  *See* Prior Mot., ECF 41.  Any potential coverage falls under Coverage B of the

7    policies, set forth below (bold in original).  The Court's citations are to the AmTrust policy; as

8    noted, the Freedom policy follows form to the AmTrust policy.

9              **Coverage B: Company Reimbursement Coverage**
        The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against
10       an **Individual Insured** during the **Policy Period** or the Extended Reporting Period,
        if applicable, for any actual or alleged **Wrongful Act** of such **Individual Insured**,
11       but only when and to the extent that such **Company** has indemnified such
        **Individual Insured** for such **Loss**.

12

13   McGovern Decl. Ex. 1 (AmTrust Policy) at 13, ECF 62-2.  The term "Loss" is defined to include

14   "**Defense Costs** which the insured is legally obligated to pay[.]"  *Id*. at 36.

15             The Court granted 180 Life's motion in part, concluding that 180 Life is the named insured

16   under the policies, the SEC subpoenas are Claims under the policies,[1] and the subpoena-related

17   expenses are Defense Costs constituting Loss within the basic scope of coverage.  *See* Prior Order

18   at 15-17.  However, the Court denied 180 Life's request for a determination that the policies

19   provide coverage for those Defense Costs, finding that 180 Life failed to show that the Insurers

20   cannot rely on the policies' Change in Control Exclusion to defeat coverage.  *See id.* at 17-19.

21             *180 Life's Current Motion for Partial Summary Judgment*

22             180 Life now seeks partial summary judgment that an "Advancement" clause in the

23   policies obligates the Insurers to advance the subpoena-related Defense Costs to 180 Life pending

24   a final coverage determination regarding the SEC subpoenas.  The Insurers oppose the motion.

25   _____

26   [1] More precisely, the SEC *investigation* is a "Claim" under the policies.  The policies define
     "Claim" to include "a civil, criminal, administrative or regulatory *investigation*" of an Individual
27   Insured; where the investigation is conducted by the SEC, the investigation becomes a "Claim"
     after service of a subpoena on the Individual Insured.  AmTrust Policy at 34 (italics added).  The
28   Court has followed the parties' lead in referring to the SEC subpoenas themselves as the "Claims,"
     as the lack of precision in terminology does not affect the Court's analysis.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   LEGAL STANDARD

A party may obtain summary judgment by showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial."  *Id*.  "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor."  *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Id*. (quotation marks and citation omitted).

## III.   DISCUSSION

180 Life seeks partial summary judgment that the policies' "Advancement" clause requires the Insurers to advance the subpoena-related Defense Costs to 180 Life immediately, pending a final coverage determination regarding the SEC subpoenas.  The Advancement clause reads as follows:

> B.  Advancement
> Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** in excess of the applicable Retention on behalf of the Insured not less often than every 90 days and prior to final disposition of the **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured**, severally according to their respective interests, in the event and to the extent that any such **Insured** shall not be entitled under the Terms and Conditions of this **Coverage Element** to payment of such **Loss**.

AmTrust Policy at 38.

It is 180 Life's position that the Advancement clause is triggered when there are "potentially covered" Claims, and that the SEC subpoenas are at least potentially covered Claims under the policies.  In opposition, the Insurers argue that the Advancement clause is triggered only by "actually covered" Claims.  The Insurers also argue that the motion must be denied under either standard, asserting that the SEC subpoenas are not even potentially covered Claims because they fall within the Change in Control Exclusion.

4

1    The Court first addresses whether the Advancement clause is governed by the "potentially

2    covered" or "actually covered" standard.  Next, the Court addresses whether the Advancement

3    clause requires the Insurers to advance to 180 Life the subpoena-related Defense Costs that 180

4    Life has advanced to Krauss and Hornig.

5    **A.      Whether the Standard is Potentially Covered or Actually Covered**

6    California law governs the interpretation of the insurance policies in this diversity case.

7    *See Encompass Ins. Co. v. Coast Nat'l Ins. Co.*, 764 F.3d 981, 984 (9th Cir. 2014) ("California's

8    substantive insurance law governs in this diversity case." (quotation marks and citation omitted)).

9    Under California law, "'[i]nterpretation of an insurance policy is a question of law and follows the

10   general rules of contract interpretation.'"  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647

11   (2003) (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)).  Policies are interpreted

12   broadly to afford the greatest possible protection to the insured.  *Id*. at 648.

13   D&O policies may impose a duty to reimburse defense costs, but the duty to reimburse

14   generally "is limited to defense costs related to *actually covered* claims, as opposed to defense

15   costs related to *potentially covered* claims."  *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th

16   232, 259 (2012) (emphasis in original).  That is because D&O policies typically provide for the

17   recovery of defense costs only as covered loss for which indemnification is to be paid.  *See id.*  A

18   D&O policy may fall outside this general rule, however, where it contains language extending the

19   insurer's duty to reimburse defense costs to potentially covered claims.  *See id.*  In *Health Net*, the

20   California appellate court determined that policy language requiring the insurer to reimburse the

21   insured for "defense costs incurred in defense of any Claim or Law Suit brought against the

22   Insured *alleging a Wrongful Act*" was sufficient to obligate the insurer to reimburse defense costs

23   "for potentially covered claims, not merely actually covered claims."  *Id*. (italics in original).

24   In *Gon v. First State Ins. Co.*, 871 F.2d 863, 868 (9th Cir. 1989), the Ninth Circuit applied

25   California law in finding that the potentially covered standard applied to a D&O policy requiring

26   the insurer to pay potentially covered legal expenses as they were incurred by the directors.  The

27   Ninth Circuit acknowledged that the insurer "may be advancing legal fees that it will have great

28   difficulty in recovering should the court subsequently decide that a claim or individual was not

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    covered by the policy." *Id*. at 869.  However, the *Gon* court found that it would be impractical to

2    apportion legal fees between covered and uncovered claims based solely on the face of the

3    complaint, "where coverage is not yet clear, because the facts are not fully developed," and that

4    attempting to do so "may deny the insureds the benefits of the protection they purchased." *Id*.

5    The Ninth Circuit concluded that, although the insurer "is entitled to apportion the expenses

6    between covered and uncovered claims and persons, it cannot do so at the expense of the insured."

7    *Id*. at 868.  Accordingly, the *Gon* court held that the insurer "must pay all legal expenses as

8    incurred, subject to apportionment and reimbursement for defense of uncovered claims or persons

9    after settlement or judgment in the underlying [ ] action." *Id*. at 869.

10            Applying these principles in the present case, the Court finds that the policies require the

11   Insurers to advance defense costs for potentially covered claims as they are incurred.  As noted

12   above, the Advancement clause provides that "the **Insurer** shall advance **Defense Costs** . . . not

13   less often than every 90 days and prior to final disposition of the **Claim**."  AmTrust Policy at 38.

14   The Advancement clause provides further that "[s]uch advanced payments by the **Insurer** shall be

15   repaid to the **Insurer**" in the event the "**Insured** shall not be entitled . . . payment of such **Loss**."

16   *Id*.  This language clearly contemplates advancement of Defense Costs for potentially covered

17   Claims, subject to recoupment by the Insurer if it ultimately turns out that the Claims are not

18   actually covered.  The Court finds that the inclusion of this language in a separate Advancement

19   clause distinguishes the policies in this case from typical D&O policies that require payment of

20   defense costs only after they have been shown to be a component of indemnified loss.  Even if the

21   Court were to find other constructions of the policy to be plausible (and it does not), the policies

22   must be interpreted broadly to afford the greatest protection to 180 Life.

23            The Court's reading of the Advancement clause is consistent with the decision of another

24   court in this district, *Braden Partners, LP v. Twin City Fire Ins. Co.*, No. 14-CV-01689-JST, 2017

25   WL 63019 (N.D. Cal. Jan. 5, 2017).  In *Braden*, the policy required that the insurer advance to the

26   insured expenses incurred in connection with claims made against the insured "*prior to disposition*

27   *of such claims*." *Id*. at \*10 (italics in original).  The *Braden* court reasoned that, "Because [n]o

28   one can determine whether the third party suit does or does not fall within the indemnification

1    coverage of the policy until that suit is resolved, this language necessarily contemplates potential,

2    rather than actual, coverage." *Id*. (quotation marks and citation omitted).  The *Braden* court also

3    found it significant that the policy defined "Claim" as a judicial or other proceeding for a

4    "Wrongful Act," and defined "Wrongful Act" as "any actual or *alleged* error, misstatement,

5    misleading statement, act. . . ." *Id*. (italics in original).  Finally, the policy in *Braden* gave the

6    insurer the right to repayment of the defense costs in the event it turned out there was no coverage.

7    *Id*.  The *Braden* court concluded that, "This right to repayment after a final determination of

8    coverage only makes sense if the duty to advance defense costs is triggered by potential

9    coverage." *Id*.  Like the policy at issue in *Braden*, the policies in the present case require

10   advancement of Defense Costs prior to disposition of the Claim; provide coverage for a Claim

11   asserting any actual or alleged Wrongful Act; and grant the insurers a right to repayment of the

12   Defense Costs in the event of a final determination of no coverage.  This Court finds no reason to

13   deviate from the persuasive reasoning of *Braden*, and likewise concludes that the potential for

14   coverage standard applies to the Insurers' duty to advance defense costs.

15   The *Braden* court acknowledged that the Ninth Circuit has not offered clear guidance on

16   the standard applicable to an insurer's duty to advance defense costs, and that some district courts

17   within the Ninth Circuit have found that duty to be limited to actually covered claims.  *See*

18   *Braden*, 2017 WL 63019, at *9 (N.D. Cal. Jan. 5, 2017) (collecting cases).  The Insurers rely on a

19   number of district court cases applying the actually covered standard in opposing 180 Life's

20   motion.  The Court finds that reliance to be misplaced, as the cases cited by the Insurers are

21   factually distinguishable.  In *Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F. Supp. 2d 995 (C.D.

22   Cal. 2009), the policy did not contain a separate advancement clause requiring advancement of

23   defense costs subject to reimbursement in the event of a later determination that they are not

24   covered loss.  In *U.S. TelePacific Corp. v. U.S. Specialty Ins. Co.*, No. CV 18-5083-DMG

25   (AGRx), 2019 WL 2590171, *4 (C.D. Cal. June 18, 2019), *aff'd*, 815 F. App'x 155 (9th Cir.

26   2020), the policy did contain an advancement clause but it was expressly limited to "Defense

27   Costs *for which this Policy provides coverage*."  To the extent any of the district court cases cited

28   by the Insurers may be viewed as factually analogous to the present case, this Court finds the

United States District Court
Northern District of California

7

1    reasoning of *Braden* to be far more persuasive.  Finally, the Insurers' citation to the Ninth

2    Circuit's decision in *Millennium Lab'ys, Inc. v. Allied World Assurance Co. (U.S.), Inc.*, 726 F.

3    App'x 571, 574 (9th Cir. 2018), does not support their position, as the policy in *Millennium* did

4    not require the contemporaneous advancement of the insured's defense costs and instead provided

5    for coverage of defense costs only as an ingredient of covered losses.

6           After careful consideration of the policy language and the relevant case law, the Court

7    concludes that the Advancement clause requires the Insurers to advance Defense Costs for

8    potentially covered Claims.

9           **B.       Whether Advancement of Subpoena-Related Defense Costs is Required**

10          Having concluded that the policies' Advancement clause is governed by the potentially

11   covered standard, the Court applies that standard in evaluating 180 Life's request for an

12   adjudication that the Insurers must advance the subpoena-related Defense Costs to 180 Life

13   pending a final coverage determination.  At the hearing, the Court stated its tentative view that 180

14   Life easily will prevail on its motion if the potentially covered standard applies.  After revisiting

15   the policy language in light of the oral argument made by AmTrust's counsel, however, the Court

16   finds that 180 Life's motion presents a close question even under the potentially covered standard.

17          As the party moving for summary judgment, 180 Life has the initial burden to show that

18   the SEC subpoenas and related Defense Costs are potentially covered in order to trigger the

19   Advancement clause.  "Under California law, the burden is on the insured to establish that a

20   claimed loss is within the basic scope of insurance coverage." *Mudpie, Inc. v. Travelers Cas. Ins.*

21   *Co. of Am.*, 15 F.4th 885, 890 (9th Cir. 2021) (quotation marks and citation omitted).  "[O]nce an

22   insured has made this showing, the burden is on the insurer to prove the claim is specifically

23   excluded." *Id*. (quotation marks and citation omitted).  As discussed herein, the Court previously

24   found that the SEC subpoenas are Claims under the policies, and the subpoena-related expenses

25   are Defense Costs constituting Loss within the basic scope of coverage. *See* Prior Order at 15-17.

26   The Court noted in its prior order that, apart from arguing that 180 Life is not the named insured,

27   the Insurers do not dispute that the SEC subpoenas constitute Claims under the policies. *See id.* at

28   17.  180 Life points to the Court's prior ruling to show that the SEC subpoenas and related

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defense Costs are within the basic scope of coverage.  That is sufficient to shift the burden to the

2    Insurers to show that the SEC subpoenas and related Defense Costs are specifically excluded

3    under the policies, and thus not even potentially covered.

4           The Insurers contend that the SEC subpoenas are specifically excluded under the Change

5    in Control Exclusion.  "[A]n insurer that wishes to rely on an exclusion has the burden of proving,

6    through conclusive evidence, that the exclusion applies in all possible worlds."  *Atl. Mut. Ins. Co.*

7    *v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1039 (2002).

8           The Change in Control Exclusion relied on by the Insurers provides as follows:

9           If during the Policy Period:

10          1.   the **Named Insured** shall consolidate with or merge into any other entity or
                 group of persons or entities acting in concert, or
11          2.   any person or entity or group of persons or entities acting in concert shall
                 acquire **Management Control** of the **Named Insured**,

12
            (1 and/or 2 herein referred to as a Change In Control), then this policy may not be
13          cancelled thereafter and it shall not, in any event, apply to any **Claim** alleging in
            whole or in part any **Wrongful Acts** committed, attempted or allegedly committed
14          or attempted by any **Insured** subsequent the date of such Change In Control.

15   AmTrust Policy at 33.

16          It is undisputed that there was a change in control on November 6, 2020, the date the

17   Merger closed.  Thus, coverage for the Claims at issue – the SEC subpoenas – is barred if they

18   "alleg[e] in whole or in part any Wrongful Acts committed, attempted or allegedly committed or

19   attempted by" Krauss and/or Hornig during the post-Merger period.  The Insurers point out that

20   the SEC subpoenas necessarily must be construed to allege Wrongful Acts by Krauss and/or

21   Hornig to be covered Claims.  As discussed above, any potential coverage for the SEC subpoenas

22   and related Defense Costs falls under Coverage B of the policies, which provides in relevant part

23   that "[t]he **Insurer** shall pay the **Loss** of a **Company** arising from *a Claim first made against an*

24   *Individual Insured . . . for any actual or alleged Wrongful Act of such Individual Insured*" that

25   has been indemnified by the Company.  AmTrust Policy at 38 (bold in original, italics added).

26   Because the SEC subpoenas must be construed to allege Wrongful Acts in order for coverage to

27   exist at all, application of the Change in Control Exclusion turns on *when* the alleged Wrongful

28   Acts are alleged to have been committed or attempted.  If the SEC subpoenas are construed to

1   allege "in whole or in part" any Wrongful Acts committed or attempted by Krauss and/or Hornig

2   after the Merger, the exclusion would apply.

3       180 Life appears to argue that the Insurers can defeat coverage only by providing

4   conclusive evidence of *actual* Wrongful Acts by Krauss and/or Hornig after the Merger.  For the

5   reasons discussed above, the Court finds this argument to be inconsistent with the relevant policy

6   language.  To establish application of the Change in Control Exclusion, the Insurers must show

7   that the SEC subpoenas are Claims "*alleging* in whole or in part any Wrongful Acts" committed

8   or attempted after the Merger.  AmTrust Policy at 33.

9       This showing is difficult to make in the context of a subpoena rather than a civil complaint

10  containing specific factual allegations of wrongdoing.  The parties have not cited any case law

11  providing guidance on how the Court is to determine whether the SEC subpoenas allege any

12  Wrongful Acts committed or attempted post-Merger.  On their face, the SEC subpoenas do not

13  allege any Wrongful Acts at all; they merely request documents.  *See* McGovern Decl. Ex. 3 (SEC

14  Subpoenas), ECF 62-4.  "When the claim is a subpoena or other investigative demand (rather than

15  a complaint in a civil litigation), we consider whether the government is investigating the insured

16  for a legal violation that falls within the policy's coverage instead of whether the complaint states

17  a claim that does the same." *Liberty Ins. Underwriters, Inc. v. Cocrystal Pharma, Inc.*, No. 22-

18  2242, 2023 WL 3067498, at \*4 (3d Cir. Apr. 25, 2023).  The SEC subpoenas fairly may be

19  characterized as investigating Krauss and Hornig for a legal violation falling within the policies'

20  definition of Wrongful Act, which includes "any actual or alleged breach of duty, neglect, error,

21  misstatement, misleading statement, omission or act by an **Individual Insured** in their respective

22  capacities as such, or in their capacity as a controlling person within the meaning of Section 15 of

23  the Securities Act of 1933, as amended or Section 20(a) of the Securities Exchange Act 1934, as

24  amended; or for any matter claimed against such **Individual Insured** by reason of his or her status

25  as an **Executive, Employee, or Outside Entity Executive**[.]"  AmTrust Policy at 37.  However,

26  characterizing the SEC subpoenas as Claims for actual or alleged Wrongful Acts of Krauss and

27  Hornig does not shed light on *when* the alleged Wrongful Acts were committed or attempted for

28  purposes of the Change in Control Exclusion.

United States District Court
Northern District of California

10

1      The Insurers emphasize that the SEC subpoenas request documents from Krauss and

2   Hornig relating to both pre-Merger and post-Merger time periods, and urge the Court to infer from

3   those requests that the SEC subpoenas allege both pre-Merger and post-Merger Wrongful Acts.

4   The Court cannot make that logical leap, especially in the absence of any case authority supporting

5   it.  Given that Krauss and Hornig resigned their positions as CEO and director, respectively, as of

6   the date of the Merger, it is entirely possible that the SEC is investigating them for alleged

7   Wrongful Acts *only* in the pre-Merger time period.  In that scenario, the Change in Control

8   Exclusion would not apply.

9      It certainly is *possible* that the SEC also is investigating Krauss and Hornig for alleged

10  Wrongful Acts in the post-Merger time period.  That possibility was the basis for the Court's

11  partial denial of 180 Life's prior motion.  As stated in the Court's prior order:  "That Krauss and

12  Hornig resigned from KBL in conjunction with the Merger does not mean that they cut off all

13  involvement with KBL/180 Life as of that date.  It also does not mean that they could not have

14  committed a wrongful act after that date."  Prior Order at 18.  Because of the possibility that

15  Krauss and Hornig might be under investigation for conduct extending into the post-Merger time

16  period, the Court declined 180 Life's request for an adjudication that the Change in Control

17  Exclusion cannot apply.  *See id.* at 18-19.  However, the possibility that the SEC may be

18  investigating Krauss and Hornig for post-Merger misconduct does not conclusively establish that

19  the Change in Control Exclusion applies.

20     The Insurers assert in their opposition that it appears from the SEC subpoenas' request for

21  both pre-Merger and post-Merger documents that the SEC is investigating "both pre-Merger and

22  post-Merger conduct *that could possibly violate* numerous federal statutes[.]"  Opp. at 5, ECF 65.

23  However, the Insurers have not presented any evidence that Krauss and/or Hornig are suspected

24  of, or being investigated for, post-Merger misconduct.  The Insurers' speculation as to what the

25  SEC may be investigating, and whether federal statutes have been violated, is insufficient to show

26  that the Change in Control Exclusion applies to bar coverage here.

27     180 Life argues that coverage for pre-Merger Wrongful Acts would not necessarily be

28  excluded even if the SEC subpoenas were construed to allege post-Merger Wrongful Acts, citing

United States District Court
Northern District of California

11

1    *Opus Bank v. Liberty Ins. Underwriters, Inc.*, 621 F. App'x 405 (9th Cir. 2015).  In *Opus Bank*,

2    the Ninth Circuit discussed the effect of a policy exclusion for Wrongful Acts allegedly committed

3    or attempted prior to the policy period.  The insured requested that the insurer provide a defense

4    for a civil action alleging both fraudulent misrepresentations made prior to the policy period and

5    retaliatory misconduct made during the policy period.  *See id.* at 405.  The *Opus Bank* court held

6    that the policy plainly covered the acts of retaliation occurring within the policy period, and that it

7    was not clear from the policy that such coverage would be lost by the inclusion in the complaint of

8    other acts occurring prior to the policy period.  *See id.* at 406.  Under those circumstances, the

9    Ninth Circuit determined that any doubt regarding insurer's duty to defend the complaint should

10   be resolved in favor of the insured.  *See id.*  In this Court's view, *Opus Bank* has little application

11   in the present case.  Unlike the complaint at issue in *Opus Bank*, which alleged separate wrongful

12   acts occurring in separate time periods, the SEC subpoenas at issue here are something of a black

13   box.  However, as discussed above, the Court finds unpersuasive the Insurers' arguments that the

14   SEC subpoenas must be construed to allege Wrongful Acts committed or attempted during the

15   post-Merger period based solely on the subpoenas' request for documents relating to that period.

16        It is the Insurer's burden to show conclusively that the Change in Control Exclusion

17   applies to bar coverage for the SEC subpoenas and related Defense Costs.  They have not done so.

18   The Insurers may be able to make this showing at a later date, upon a more factually developed

19   record regarding the SEC investigation.  If so, they will be able to recoup any Defense Costs

20   advanced to 180 Life for Claims that turn out not to be covered.  On the limited record before it,

21   however, the Court finds that there is a potential for coverage for the SEC subpoenas and related

22   Defense Costs, and thus that 180 Life is entitled to advancement of the subpoena-related Defense

23   Costs consistent with the policies' Advancement clause.

24        Accordingly, 180 Life's motion for partial summary judgment is GRANTED.

25   //

26   //

27   //

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**IV.    ORDER**

2       (1)    180 Life's motion for partial summary judgment is GRANTED.

3       (2)    AmTrust is obligated under its policy to advance to 180 Life all Defense Costs in

4              excess of the retention threshold that 180 Life has advanced, and will advance, to

5              Krauss and Hornig in connection with the SEC subpoenas;

6       (3)    Upon exhaustion of the AmTrust policy, Freedom is obligated under its policy to

7              advance to 180 Life all Defense Costs that 180 Life has advanced, and will

8              advance, to Krauss and Hornig in connection with the SEC subpoenas.

9       (4)    This order terminates ECF 62.

10

11   Dated:  February 12, 2024

12

13   BETH LABSON FREEMAN
     United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13